IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SAMUEL WAYNE BARIA, JR | * | |
| | * | |
| Plaintiff, | * | Case No. 15-55 |
| | * | |
| vs. | * | |
| | * | |
| BANK OF AMERICA, N.A. AND | * | JURY TRIAL REQUESTED |
| BANK OF NEW YORK MELLON, NA, | * | |
| AS TRUSTEE ON BEHALF OF CWABS | * | |
| ASSET-BACKED CERTIFICATES | * | |
| TRUST 2007-BC1, | * | |
| | * | |
| Defendants. | * | |

## COMPLAINT

**NOW COMES** Plaintiff Samuel Baria and as his Complaint against the above-named Defendants avers as follows:

## PRELIMINARY STATEMENT

This action arises from the Defendants' acts and omissions regard the Plaintiff's home mortgage loan. At all relevant times, BANA serviced the loan as agent for and on behalf of Bank of New York Mellon, NA, which claims to be the owner of the loan. Specifically, Defendants have misapplied Plaintiffs's mortgage payments and falsely demanded sums not owed under threat of foreclosure. Also, BANA has failed to comply with federal law by failing to investigate and correct its servicing error and failed to provide certain requested information. Defendants' failure to properly apply payments received is a breach of the loan documents and also a violation of federal law. Plaintiff seeks damages and attorneys fees for multiple violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. 1692 ("FDCPA") and the Truth in Lending Act, 15 U.S.C. §§

Plaintiff also seeks damages for breach of the mortgage and note and various other common law claims.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1640, 15 U.S.C. 1692k and 12 U.S.C. § 2617.

2. Venue is proper here because the events giving rise to Plaintiff's cause of action occurred in this district.

## THE PARTIES

3. Plaintiff is an adult resident of Mobile County, Alabama.

4. Defendant Bank of New York Mellon, N.A. ("Mellon") is a corporation formed outside the State of Alabama. It is being sued solely in its capacity as trustee on behalf of CWABS Asset-Backed Certificates Trust 2007-BC1. At all relevant times it owned or claimed to own Plaintiff's mortgage loan and the servicing of that mortgage was performed by its agent, Bank of America, N.A.

5. Defendant Bank of America, N.A. ("BANA") is a corporation formed in the State of Delaware, with its principal place of business in North Carolina.

## FACTUAL ALLEGATIONS

6. On September 15, 2009 Plaintiff and his wife entered into a mortgage loan with Wilmington Finance, Inc. in the amount of $89,000.00. The interest rate on the loan is fixed at 8.95 percent, rendering a monthly principal and interest payment of $712.91. The loan is secured by a mortgage on Mr. Baria's home located at 9400 Hubert Morris Road, Wilmer, Alabama. He lives there with his wife and two children. This has been their home since 2006.

7. BANA has serviced the loan from its origination. At all relevant times, BANA has serviced the loan on behalf of Mellon who claims to own the loan. At all relevant times BANA has acted as the agent of Mellon in connection with the servicing of Mr. Baria's loan.

8. On September 28, 2009, Mr. Baria filed a Chapter 13 Bankruptcy. On December 8, 2009, BANA filed a Proof of Claim in Mr. Baria's bankruptcy for arrearage it claimed was owed on the mortgage. BANA claimed the loan was due for the July 2009 payment and filed its claim for 3 months of arrearage, plus fees. That claimed arrearage was placed in Mr. Baria's bankruptcy plan and was paid through the bankruptcy trustee.

9. Shortly after the bankruptcy was filed, Mr. Baria spoke with BANA representatives about a possible modification which would lower the interest rate. He was told by BANA that in order to qualify for a modification he would have to stop making regular payments. In reliance on those statements, and the hope that his 8.95 % interest rate would be reduced, Mr. Baria stopped making regular payments as instructed. Over the following several months, he submitted and re-submitted information requested by BANA, and he was told that his modification request was under review.

10. In June 2010 BANA notified Baria that his request for modification was denied. Shortly thereafter, BANA filed a Motion for Relief from Stay in the Bankruptcy Court claiming that Baria missed his payments for February 2010 through June 2010 and seeking relief from the stay in order to foreclose on the Barias' home. The total claimed post-petition arrearage, including fees, was $3,811.01.

11. On July 21, 2010, the Bankruptcy Court entered conditionally denied BANA's Motion for Relief from Stay. The Court denied BANA's request for leave to foreclose and ordered that the

alleged post-petition arrearage (which at that point totaled $4,523.23) be added to the plan. This represented payments due from February through July 201. On July 26, 2010, BANA filed a claim in the amount of this post-petition arrearage and Mr. Baria began paying that arrearage as part of his bankruptcy plan.

12. Mr. Baria continued to make his regular monthly payments and his Chapter 13 payments, which included payment of the pre-petition and post-petition arrearage which BANA claimed was owed.

13. BANA failed to apply post-petition payment in a manner which accurately reflected the status of the loan and Mr. Baria's bankruptcy. When he filed bankruptcy in September 2009, BANA's records showed that loan was due for the July 2009 payment. Then BANA applied Baria's post-petition payments to the alleged pre-petition arrearage. The first post-petition payment was applied to July 2009, the second to August 2009 and so on. BANA continued to apply payment in this manner even after it began receiving payments of the pre-petition arrearage through the Trustee. This results in BANA collecting pre-petition payment twice: once by applying post-petition payments and again through the bankruptcy Trustee. This also resulted in BANA's records showing a false arrearage.

14. BANA's misapplication of payments continued after the claimed post-petition arrearage was added to the bankruptcy plan as ordered by the Bankruptcy Court on July 21, 2010. BANA continued to apply subsequent regular payments to that arrearage even though that arrearage was being paid through the Trustee.

15. As a result of its misapplication of post-petition payments, BANA consistently claimed that Baria owed arrearage that was being paid through the bankruptcy.

16. On October 11, 2013, Sirote & Permutt, BANA's foreclosure lawfirm, notified Mr. Baria that BANA considered him in default of the mortgage and stated that he was 20 months behind. The notice of default said that he had failed to make payments from March 2012 to October 2012 and from November 2012 to October 2013. The total arrearage demanded in that notice was $15,479.11. This claim was entirely false and resulted from BANA's misapplication application of post-petition payments. Nevertheless, Sirote's letter stated that foreclosure proceedings would commence if $15,479.11 was not paid in lump sum within 15 days.

17. In order to save his family's home, Mr. Baria raided his 401(k) retirement account and paid the amount demanded in full. At the same time, he continued to protest BANA's claim. In fact, on October 25, 2013, he filed an "Objection to Notice of Default" in bankruptcy court. That notice stated as follows:

> Debtors herewith give NOTICE of their objection to the "FIFTEEN (15) DAY NOTICE OF DEFAULT" ("NOD") dated October 11, 2013 and delivered by Bank of America, N.A. ("BOA"). A copy of the NOD is attached hereto as Exhibit A. The NOD was issued by BOA in accordance with the Court's order of July 21, 2010 (Doc 41) which conditionally denied BOA's motion for relief from the stay and contained automatic termination provisions.
>
> The NOD falsely states that Debtors have failed to make twenty (20) monthly payments and owe a total arrearage of $15,479.11. Debtors do not owe that amount. Upon information and belief, that amount results from BOA's misapplication of payments received and failure to account for payments made. Debtors are making arrangements to pay the amount claimed owed in order to prevent BOA from foreclosing on their home. However, they make that payment under protest and reserve all rights and claims related to BOA's wrongful actions.

18. By October 30, 2014, Mr. Baria paid his bankruptcy plan and the bankruptcy was discharged.

19. In January 2014, BANA charged Baria for lender's placed insurance, claiming that Baria had allowed insurance to lapse. However, there was no lapse and BANA wrongfully placed coverage and charged Baria for that coverage.

20. On July 29, 2014, Mr. Baria sent BANA a letter explaining is belief that BANA had miscalculated the amount due under his loan and had misapplied the payments he may while he was in bankruptcy. Mr. Baria also explained his belief that BANA had wrongfully charged him for lender placed insurance. The letter requested BANA to investigate these matters and refund the money wrongfully collected. The letter also requested information and documents regarding the payment history of the loan and other aspects of the servicing of the loan. (A copy of the July 29th letter is attached hereto as Exhibit "B"[1]).

21. Mr. Baria's July 29th letter constitutes a "qualified written request" ("QWR") and a "notice of servicing error" ("NOE") within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

22. BANA responded to Baria by letters dated August 8, 2014 and August 25, 2014. (Those letters are attached hereto as Exhibits B and C respectively). The August 8th letter provided a loan history statement and made reference to other documents to be sent under separate cover. However, that letter did not provide any additional information, nor did it answer the specific questions presented in Mr. Baria's NOE. The August 25th letter also provided a payment history, as well as a copy of the mortgage and note, which were not requested. The letter did not include any explanation of why BANA believes it properly allocated post-petition payments, nor did the letter

---

[1] The original letter contained the full account number associated with the Barias' mortgage loan. Pursuant to Rule 5.2(a), *Federal Rules of Civil Procedure*, the full account number has been redacted from the copy filed with this Complaint.

address Mr. Baria's statement that there was no insurance lapse. The letter merely provided basic and generic information regarding the loan which was not responsive to the very specific issues outlined in Mr. Baria's letter. In fact, the payment history attached to response confirms that post-petition payments were consistently applied to pre-petition arrearage and that, as a result, BANA had been double-paid part of that arrearage. The payment history also confirmed that the October 11, 2013 notice of default, and the claim that the Barias were 20 months behind in their payments, was false. Nevertheless, BANA made no corrections to the account, nor has it issued any refund.

23.     BANA took no reasonable measures to correct the error identified in Mr. Baria's letter.

24.     Since receipt of Baria's July 29th letter, BANA has reported false and derogatory information to consumer reporting agencies regarding the status of the Barias' loan.

25.     BANA engages in a pattern and practice of improperly responding to notices and requests from borrowers provided pursuant to RESPA Section 2605. Part of this practice is to use the standardized form-based response letters, like the one used to respond to Mr. Baria's request, which contain boilerplate statements and generic information that is non-responsive the borrowers' specific requests.  It is also BANA's practice is to provide basic loan documents, regardless of whether they were requested or are relevant to the specific request. These documents include a copy of the promissory note and mortgage. BANA has also engaged in a pattern and practice of failing to conduct any reasonable investigation of the error included in the borrower's notice, and continuing to report false information to credit bureaus after receipt of a Notice of Error.

## COUNT I
## (BREACH OF MORTGAGE AND NOTE)

26. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

27. The acts and omissions made by Defendants, as alleged herein, constitute a breach of the mortgage agreement and note. These acts and omissions include, but are not limited to, the failure to apply payments tendered by Plaintiff in accordance with the promissory note and mortgage. In addition to violating the express provisions of the mortgage, Defendants violated the implied duty of good faith and fair dealing.

28. The acts and omissions taken by BANA were made on Mellon's behalf and it is liable for BANA's acts and omissions. In addition to acting as Mellon's servicing agent, BANA was assigned the mortgage and is a party to that instrument.

29. Plaintiff has suffered damage as a proximate result of the said breach.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against BANA and Mellon for breach of the mortgage and note, and award him compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT II
## (VIOLATIONS OF RESPA)

30. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

31. Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), grants borrowers the right to submit a "qualified written request" ("QWR") to the loan

servicer requesting information and documents pertaining to the servicing of her loan. That provision and its implementing regulations also grant borrowers the right to submit a "notice of servicing error" ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

32. A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

33. Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Finance Protection Bureau in 2013 promulgated new regulations which clarified the borrower's rights to have errors corrected and the servicer's duties in responding to a notice of servicing error. 12 C.F.R. § 1024.35. These new regulations became effective January 10, 2014.

34. Under Section 2605(e) and the implementing regulations, servicers must take the following actions upon receipt of a QWR and/or NOE:

> -Provide a written acknowledgment of the correspondence within five days of the servicer's receipt of the QWR;
>
> -Within 30 days conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account and provide a the borrower with written explanation of the corrections made, the effective date of the correction and contact information for further assistance;
>
> -If, after reasonable investigation, the servicer determines that no error was committed, it must, within 30 days of receipt of the notice, provide the borrower with a written explanation of reasons for its determination, a statement of the borrower's right to request documents relied on by the servicer in reaching its determination and contact information for further assistance; either the reason for the servicer's belief that the account is being serviced correctly or a description of the changes made; and
>
> -If a servicer determines that it is not required to comply with these requirements then it must, within five days after receipt, provide written notice to the borrower setting forth the reasons for such determination.

35. In addition to these requirements, the 2010 amendments to RESPA added additional "servicer prohibitions." 12 U.S.C. § 2605(k). Under these prohibitions, a servicer may not:

-Obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance. 12 U.S.C. § 2605(k)(A);

-Charge fees for responding to valid qualified written requests or notices of servicing errors. 12 U.S.C. § 2605(k)(B);

-Fail to take timely action to respond to a borrower's notice of servicing error relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties. 12 U.S.C. § 2605(k)(C);

-Fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan. 12 U.S.C. § 2605(k)(D); or

-Fail to comply with any other obligation imposed under the implementing regulations. 12 U.S.C. § 2605(k)(E)

12 U.S.C.A. § 2605(k)

36. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

37. Defendant BANA is a "servicer" with respect to Plaintiff's loan as that term is defined in 12 U.S.C. § 2605(i)(2).

38. Mr. Baria's July 29, 2014 letter constitutes a "qualified written request" ("QWR") and a "notice of servicing error" ("NOE") within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

39. BANA has violated 12 U.S.C. § 2605(e) by failing to properly respond to Plaintiff's QWR and NOE and to make appropriate corrections to the account as required under that section and Reg. X. Specifically, BANA failed to conduct any reasonable investigation of the errors described in Plaintiff's letter and failed to refund monies wrongfully collected. BANA also

continued to report false and derogatory information to consumer reporting agencies after receipt of the notice of error. This is also a violation of Section 2605(e) and its implementing regulations.

40. BANA has also violated 12 U.S.C. § 2605(k) in at least the following ways:

-Failing to take timely action to respond to Plaintiff's notice of servicing error;

-Failing to comply with the requirements set out in Reg. X regarding responding to a QWR and a NOE, conducting an investigation of servicing errors and correcting errors; and

-Purchasing lender-placed insurance without a reasonable basis to believe that borrower had not complied with his obligation to maintain coverage.

41. Plaintiff has suffered actual damages as a proximate result of BANA's failure to comply with Section 2605(e) and (k).

42. As alleged herein, BANA has engaged in a pattern and practice of acts and omissions which violate Section 2605(e) sufficient to allow recovery of statutory damages under Section 2605(f).

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against BANA for each violation of RESPA, awarding the following relief:

A. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

B. Reasonable attorney's fees, and costs expended in this proceeding; and

C. Such other and further relief as the Court may deem just and proper.

## COUNT III
## (VIOLATION OF THE TRUTH IN LENDING ACT)

43. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

44. This count asserts a claim under the Truth in Lending Act ,15 U.S.C. § 1600 - 1666 ("TILA")

45. Mellon, as creditor, was required by 15 U.S.C. § 1639f to promptly and accurately credit the Plaintiff's account with the payments received.  It has failed to do so.

46. Plaintiff has suffered damages as a result of Mellon's TILA violation.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Mellon for its violations of TILA and award Plaintiff statutory damages, compensatory damages, attorneys fees and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT IV
## (WANTONNESS)

47. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

48. The acts and omissions alleged herein by Defendants constitute wantonness and were made with a wanton, reckless or conscious disregard for the Plaintiff's rights and welfare.

49. Defendants have also wantonly hired, trained and supervised its employees and agents.

50. The acts and omissions taken by Defendant BANA were made on Mellon's behalf as agent and Mellon is liable for BANA's tortuous acts and omissions.

51. Plaintiff has suffered damage as a proximate result of the said wantonness.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants for wantonness and award Plaintiff compensatory damages, including damages for mental anguish and

...

emotional distress; and punitive damages, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT V
## (NEGLIGENCE)

52. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

53. The acts and omissions alleged herein by Defendants constitute negligence.

54. Defendants also negligently hired, trained and supervised its employees.

55. The acts and omissions taken by BANA were made on Mellon's behalf as agent and Mellon is liable for BANA tortuous acts and omissions.

56. Plaintiff has suffered damage as a proximate result of the said negligence.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants negligence and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS AND DEFENSES ASSERTED HEREIN**

_____
KENNETH J. RIEMER (RIEMK8712)
Underwood & Riemer, P.C.
Attorney for Plaintiff
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212
kjr@alaconsumerlaw.com

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

Bank of America, N.A.
c/o CT Corporation
2 North Jackson Street
Suite 605
Montgomery, AL 36104

Bank of New York Mellon, N.A.
c/o CT Corporation
2 North Jackson Street
Suite 605
Montgomery, AL 36104